### Grey v. Davidson.

December 15, 1950.

As Modified on Denial of Rehearing February 2, 1951.

Astor Hogg, Judge.

W. W. Reeves and C. Guthrie Yager for appellant.

Alva A. Hollon for appellee.

JUDGE KNIGHT—Affirming.

Appellee brought this suit against appellant for damages totaling $16,820 for personal injuries, hospital and medical expenses, damage to her car and loss from being deprived of its use. At the conclusion of the trial, the jury awarded a verdict of $5000 in her favor. Appellant prosecutes this appeal from a judgment based on that verdict urging reversal on three grounds: (1) that appellant was entitled to a peremptory instruction because it was not shown that he was owner of the car allegedly causing the accident or that it was being driven by his agent, servant or employee acting for him and in the scope of his employment; (2) erroneous instructions given to the jury; and, (3) that the verdict was excessive. These will be considered in that order.

The accident occurred on August 4, 1947, on state highway 15 at the intersection of that road with a side road known as Pigeon Roost road in Perry county. Appellee, in a Pontiac, which was being driven by her sixteen year old son, was proceeding in a southerly direction toward Hazard, while the other car involved, a Plymouth, was being driven in a northerly direction by Kelsey Jones, accompanied by several passengers, all of whom were enroute to a funeral on Pigeon Roost creek. The collision occurred when Kelsey Jones made a left turn into the latter road from highway 15. The right side of both cars was damaged and appellee's right arm was broken. There is conflict in the evidence as to how the accident occurred but since it is not disputed that there was sufficient evidence to take the case to the

jury on this question, it will be unnecessary to discuss this phase of the case.

The real issue involved on this appeal is the ownership of the Plymouth car and whether or not its driver, Jones, was acting as the agent of appellant in the operation of the car at the time of the accident. This question will require some consideration of the evidence on that phase of the case.

The evidence for appellant was in substance that he formerly owned the 1942 Plymouth car involved in the accident; that on or about January 28, 1947, he sold the car to Earl Feltner who gave him a check dated on that day for $1200 in payment therefor. This check, endorsed by appellant and with perforations showing it was paid on January 29, 1947, is filed as an exhibit. He further testified that after the car was sold, he had no further control over it and that he never employed a driver to drive that car after he sold it.

Earl Feltner testified that he bought the Plymouth car here involved from appellant on January 28, 1947, giving his check therefor, and kept it until July 5th or 6th, 1947, when he sold it to Jim Jones, father of Kelsey Jones, for $1200 after which he had no further control of it. On cross-examination he admitted that he got no bill of sale when he bought the car from Zack Grey; that it was already licensed as a taxi in the name of Grey when he bought it and that he did not get the license transferred; that printed on the side of the cab was "Grey's Cab, Hardburley, Ky."

Kelsey Jones, driver of the car at the time of the accident, testified that at that time the car was owned by his father, Jim Jones, who had owned it about a month; that it was being driven on the day of the accident with the knowledge and consent of his father but that it was not being used as a taxicab on that day; that Zack Grey had no control over him on that day nor during the month he had driven it prior thereto.

Jim Jones testified that he bought the Plymouth car from Earl Feltner on or about July 4th or 5th, 1947, for $1200 cash and took possession of it at that time; that it was being used on the day of the accident to carry some people and members of his family to the funeral of a relative; that he did not get a bill of sale

and he was told that the bill of sale was still in the name of Zack Grey; that Earl Feltner said it was all right for his son, Kelsey, to drive it and that on the day of the accident it was being used in his business, not Grey's. On cross-examination he said he did not get a bill of sale until about January 1948 at which time he or his wife paid Zack Grey $9 for the transfer; that he did not have it licensed as a taxicab and left the name of "Grey's Taxi" on it.

The evidence relied on by appellee to establish that appellant was the owner of the car and that it was being operated by Kelsey Jones as his agent was in substance as follows: Jessie Horn, deputy county clerk of Perry county, testified that her records showed that the Plymouth car in question was registered in the early part of 1947 in the name of Zack Grey, Hardburley, Ky., and that it was transferred of record to Jim Jones on December 11, 1947. It was shown by the testimony of the circuit clerk of Perry county that a suit for damages had been filed against Zack Grey on July 29, 1947. This suit by Remine Combs arose out of an accident which had occurred on May 24, 1947. On August 5, 1947, after he had supposedly sold the car, Zack Grey filed an answer and counter-claim for $550 and the case was dismissed settled on January 28, 1948. In the cross-examination of Zack Grey after he had given his testimony in the instant case, he admitted that the accident of May 24, 1947, involved the same Plymouth involved in the present accident; that that suit was defended in his name and that he signed the answer and counterclaim filed in that case though he thinks it was not sworn to. There were other bits of testimony such as that of Elmer Holliday, a deputy sheriff, who went to the scene to investigate the accident and said that he was told by Kelsey Jones that he was driving for Zack Grey. The court admonished the jury that this could not be considered as substantive evidence but only for the purpose of discrediting the testimony of Jones. Holliday also testified that when he was returning to Hazard after investigating the accident he met Zack Grey going toward the scene of the accident; that he stopped and asked about the accident saying that he had a car in an accident down there and was going to see about it. There was also the testimony of Wayne Davidson, husband of appellee, who said that he went to Smittie's garage where his

wife's car had been taken after the wreck and while there he had a conversation with Grey who was there with a 1942 Plymouth with a sign on it, "Z. Grey, Hardburley, Ky. Taxicab"; that Grey said "looks like my car had a pretty bad accident with your car down the road"; that they talked about the damage to Grey's car which he thought would be $200 to $300; that he told the witness to get an estimate on the Davidson car and he (Grey) would fix it for him; that he saw Grey several days later sitting in his taxicab and Grey told him at that time "you can rest assured it will be taken care of." Mrs. Shackelford, superintendent of nurses at the hospital where appellee was treated and a sister of appellee, testified that she saw appellant, Grey, on the same floor of the hospital where her sister was located and, recognizing him as a taxi driver, she asked him "Was it your cab?" to which he replied "My cab, but I wasn't driving." Appellant denied the above statements attributed to him by Mr. Davidson and Mrs. Shackelford.

It will thus be seen that the evidence was conflicting as to whether the automobile involved in this accident belonged to appellant at the time of the accident and was driven by appellant's agent and it was for the jury to decide this question of fact. The fact, admitted by him, that after he had been sued for damages in an accident involving this taxi, which occurred after he had supposedly sold it, he filed an answer and counter-claim for damages in his own name; the further fact that when he supposedly sold it, he made no transfer of record title; the admissions he made against interest, if he did make them, which was for the jury to say, constitute substantive evidence of probative value which to the jury may have outweighed his direct evidence that he sold the car to Feltner as evidenced by the check which the latter gave him. The lower court did not err in refusing peremptory instructions on this ground.

## Instructions

It is appellant's contention that instruction 1-a, given by the court, was erroneous because it used the conjunctive "and" instead of the disjunctive "or." By this instruction, in order to find for Grey, the jury was required to believe that Zack Grey did not own the automobile driven by Kelsey Jones *and* that Kelsey

Jones was not acting as Grey's agent and employee. This instruction standing alone could have been prejudicial. However, it was corrected when a fuller and more complete instruction, IV-A, was given. That instruction, as given, reads as follows: "The court instructs the jury that the defendant, Zack Grey, is not responsible for the acts or omissions of any person who was, at the time of said act or omission, not employed by Zack Grey as his agent or servant and not acting under the control or direction of the said Zack Grey. If you shall believe from the evidence that at the time and upon the occasion mentioned in the evidence, Kelsey Jones was not the agent or servant of the defendant, Zack Grey, and was not employed by him, or if you shall believe from the evidence that the Plymouth automobile which the said Kelsey Jones was driving at the time of the said accident was not owned by the said Zack Grey and was not at said time and place under his direction and control and was being operated by the said Kelsey Jones without the knowledge or consent of the said Zack Grey, then the law is for the defendant, Zack Grey, and you will find for him. If you shall believe from the evidence that Kelsey Jones at the time and place of the accident mentioned in the evidence was not the agent of Zack Grey and acting within the scope or apparent scope of his authority, then the law is for the defendant, Zack Grey, and you will find for him."

In Stanley's Instructions to Juries, Sec. 32, page 29, it is said: "The use of 'and' instead of 'or' connecting a group of items of injuries for which damages could be awarded is not prejudicial, especially when the error was corrected by a later instruction in which the disjunctive connective was used."

Also in Sec. 1, page 2, of the same work, it is said: "All instructions should be read together and considered in their entirety. Although they may be technically erroneous from the standpoint of exact legal science and procedure, a practical consideration such as given by a jury of laymen may justify a decision that they are correct. If they are correct in principle a judgment will not be reversed on account of instructions defective in form."

We think instruction IV-A, quoted above, fully set out the issues as to the ownership of the Plymouth auto-

mobile involved in the accident and the relationship between Kelsey Jones and Zack Grey on the question of agency. The use of the conjunctive "and" instead of the disjunctive "or" in instruction 1 was, therefore, not prejudicial and does not justify a reversal on that ground.

## Excessive Damages

There remains only to be considered whether the verdict of the jury is excessive. It is shown by the evidence of appellee that she remained in the hospital about two weeks; that her arm remained in a cast about four months and in a sling for an additional three or four months; that at the time she testified, about two years after the injury, it still bothered her and ached and hurt a lot; that she could not raise her arm to her head to comb her hair or to perform all her household duties; that her hospital bill, including special nurses, and doctor's bill totaled $304.50. Damage to her automobile was shown to be $604.47.

Dr. Snyder, who treated her, testified that she had a comminuted fracture of the humerus, that is, it was broken in several small fragments; that she was in the hospital eleven days and was given about twelve treatments for the next several months after her discharge from the hospital; that she has a limitation in the movement of her arm up and down and has difficulty in combing her hair and getting things off shelves. He testified that the injury to her arm is permanent.

Under this evidence, which was not contradicted, we cannot say that the verdict is excessive. While it is large, it does not strike us at first blush as being excessive. Almost $1000 of the verdict was for actual costs of repairs to the automobile and for money paid out for hospital and medical expenses. The remaining $4000 does not appear to us to be excessive for the permanent injury which the evidence shows appellee has sustained as a result of the accident.

Wherefore the judgment is affirmed.